# Judge Hellerstein 09 CV 8452

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

FAR EASTERN SHIPPING CO., PLC,       :      09 CV _____

                Plaintiff,      :      ECF CASE

      - against -             :

                          :

PHOENIX GROUP DEVELOPMENT LIMITED  :
a/k/a PHOENIX GROUP DEV. LTD.,

                          :

           Defendant.      :

----------------------------------------------------------X

RECEIVED OCT - 5 2009 U.S.D.C. S.D. N.Y. CASHIERS

## VERIFIED COMPLAINT

Plaintiff, FAR EASTERN SHIPPING CO. PLC (hereafter referred to as 'FESCO" or "Plaintiff"), by and through its attorneys, Lennon, Murphy, and Lennon, LLC, as and for its Verified Complaint against the Defendant,. PHOENIX GROUP DEVELOPMENT LIMITED a/k/a PHOENIX GROUP DEV. LTD. (hereafter referred to as "PHOENIX" or "Defendant"), alleges, upon information and belief, as follows:

## SUBJECT MATTER JURISDICTION

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333.  This action involves the breach of maritime contracts of charter.  This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States § 1331.

## THE PARTIES

2.      At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and operating under foreign law with a place of business at 15, Aleutskaya Street Vladivostok, Russia 690990 and is principally engaged in international shipping of cargo through its fleet of commercial motor vessels.

3.      Upon information and belief, Defendant PHOENIX was, and still is, a foreign corporation, or other business entity, organized and operating under, and existing by virtue of, foreign law, with a place of business at Office 7/F Kimley Commercial Building, #142-146 Queens's Road Central, Hong Kong

## THE CLAIMS

### *April 3, 2009 Charter Party – M/V Pioner Chukotki*

4.      Plaintiff and Defendant entered into a voyage charter party reflected by a Fixture Recap dated April 3, 2009.  *A copy of the April 25, 2006 charter party is attached hereto as Exhibit 1.*

5.      The April 3, 2009 charter party called for carriage of a cargo of about 5,300 CBM of saw logs from 1 safe port / safe anchorage De-Kastri, Russia, to 1 safe port / safe berth Taicang or Dalian range, China aboard the commercial motor vessel Pioneer Chukotiki.  *See Ex. 1, clauses 2 - 3.*

6.      The April 3, 2009 charter party provided a loading and discharging rate of 800 CBM per day per 24 consecutive vessel working hours and stipulated that demurrage, for vessel time exceeding the allowed time for cargo loading and discharge operations, would be $2,000 per day pro rata  *See Ex. 1, clauses 5 - 6.*

7.      FESCO carried out its obligations under the charter party at all times and safely loaded, carried and discharged PHOENIX' cargo.

8.      PHOENIX exceeded the allowed time for cargo loading by 4.32917 days thereby incurring $8,658.34 in demurrage to FESCO.  *See FESCO Laytime Statement attached hereto as Exhibit 2.*

9.      FESCO sent messages on July 2, 2009 and August 5, 2009 directing PHOENIX to pay the outstanding demurrage to FESCO under the April 3, 2009 charter party. *See FESCO messages attached hereto as Exhibit 3.*

10.     Despite FESCO's lawful demands PHOENIX has failed to remit payment due and owing to FESCO. PHOENIX' failure to remit payment to FESCO under the April 3, 2009 charter party is a breach of its obligations thereunder and constitutes a maritime claim.

11.     The April 3, 2009 charter party requires all claims arising thereunder to be resolved at London arbitration pursuant to English law. *See Ex. 1, clause 16 and 20.*

12.     Plaintiff will commence arbitration of its claims against PHOENIX after it obtains security for its claims and jurisdiction over PHOENIX by way of attachment of PHOENIX' property in New York.

13.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London arbitration conducted pursuant to English law. As best as can now be estimated, Plaintiff expects to recover the following amounts:

| | | |
|---|---|---|
| A. | Principal claim: | $8,658.34; |
| B. | Estimated interest on claims:<br>[2 years at 7%, compounded quarterly] | $1,289.07; |
| C. | Estimated attorneys' fees: | $5,000.00; and |
| D. | Estimated arbitration costs/expenses: | $2,500.00. |
| **Total:** | | **$17,447.41.** |

### *April 17, 2009 Charter Party – m/v Pioner Kirgizii*

14.     Plaintiff and Defendant entered into a voyage charter party reflected by a Fixture Recap dated April 3, 2009. *A copy of the April 17, 2009 charter party is attached hereto as Exhibit 4.*

15.     The April 17, 2009 charter party called for carriage of a cargo of about 5,200 CBM of saw logs from 1 safe port / safe anchorage De-Kastri, Russia, to 1 safe port / safe berth Taicang or Dalian range, China aboard the commercial motor vessel Pioneer Kirgizii. *See Ex. 4, clauses 2 –3.*

16.     The April 17, 2009 charter party provided a loading rate of 800 CBM per day per 24 consecutive vessel working hours, a discharge rate of 1,000 CBM per day per 24 consecutive vessel working hours, and stipulated that demurrage, for vessel time exceeding the allowed time for cargo loading and discharge operations, would be $2,000 per day pro rata. *See Ex. 4, clauses 5 – 6.*

17.     FESCO carried out its obligations under the charter party at all times and safely loaded, carried and discharged PHOENIX' cargo.

18.     PHOENIX exceeded the allowed time for cargo loading and discharging by 2.49861days thereby incurring $4,997.22 in demurrage to FESCO. *See FESCO Laytime Statement attached hereto as Exhibit 5.*

19.     FESCO sent messages on July 2, 2009 and August 5, 2009 directing PHOENIX to pay the outstanding demurrage to FESCO under the April 17, 2009 charter party. *See FESCO messages attached hereto as Exhibit 3.*

20.     Despite FESCO's lawful demands PHOENIX has failed to remit payment due and owing to FESCO.  PHOENIX' failure to remit payment to FESCO under the April 17, 2009 charter party is a breach of its obligations thereunder and constitutes a maritime claim.

21.     The April 17, 2009 charter party requires all claims arising thereunder to be resolved at London arbitration pursuant to English law. *See Ex. 4, clauses 16, 20.*

22.     Plaintiff will commence arbitration of its claims against PHOENIX after it obtains

security for its claims and jurisdiction over PHOENIX by way of attachment of PHOENIX'

property in New York.

23.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party in

London arbitration conducted pursuant to English law.   As best as can now be estimated,

Plaintiff expects to recover the following amounts:

| | | |
|---|---|---|
| A. | Principal claim: | $4,997.22; |
| B. | Estimated interest on claims:<br>[2 years at 7%, compounded quarterly] | $ 744.00; |
| C. | Estimated attorneys' fees: | $5,000.00; and |
| D. | Estimated arbitration costs/expenses: | $2,500.00 . |
| **Total:** | | **$13,241.22.** |

### April 29, 2009 Charter Party – m/v Arakan

24.     Plaintiff and Defendant entered into a voyage charter party reflected by a Fixture

Recap dated April 29, 2009.   *A copy of the April 29, 2009 charter party is attached hereto as*

*Exhibit 6.*

25.     The April 29, 2009 charter party called for carriage of a cargo of about 6,000

CBM of saw logs from 1 safe port / safe anchorage De-Kastri, Russia, to 1 safe port / safe berth

Taicang or Dalian range, China aboard the commercial motor vessel Arakan. *See Ex. 7, clauses*

*2 –3.*

26.     The April 29, 2009 charter party provided a loading rate of 800 CBM per day per

24 consecutive vessel working hours, a discharge rate of 1,000 CBM per day per 24 consecutive

vessel working hours, and stipulated that demurrage, for vessel time exceeding the allowed time

for cargo loading and discharge operations, would be $2,000 per day pro rata. *See Ex. 7, clauses 5 – 6.*

27.    FESCO carried out its obligations under the charter party at all times and safely loaded, carried and discharged PHOENIX' cargo.

28.    PHOENIX exceeded the allowed time for cargo loading and discharging by 0.54861 days thereby incurring $ 1,097.22 in demurrage to FESCO. *See FESCO Laytime Statement attached hereto as Exhibit 7.*

29.    FESCO sent messages on July 2, 2009 and August 5, 2009 directing PHOENIX to pay the outstanding demurrage to FESCO under the April 29, 2009 charter party. *See FESCO messages attached hereto as Exhibit 3.*

30.    Despite FESCO's lawful demands PHOENIX has failed to remit payment due and owing to FESCO. PHOENIX' failure to remit payment to FESCO under the April 29, 2009 charter party is a breach of its obligations thereunder and constitutes a maritime claim.

31.    The April 29, 2009 charter party requires all claims arising thereunder to be resolved at London arbitration pursuant to English law. *See Ex. 7, clauses 16, 20.*

32.    Plaintiff will commence arbitration of its claims against PHOENIX after it obtains security for its claims and jurisdiction over PHOENIX by way of attachment of PHOENIX' property in New York.

33.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London arbitration conducted pursuant to English law. As best as can now be estimated, Plaintiff expects to recover the following amounts:

A.    Principal claim:                                          $1,097.22;

C.    Estimated interest on claims:                    $  163.36;
      [2 years at 7%, compounded quarterly]

6

| C. | Estimated attorneys' fees: | $5,000.00; and |
| D. | Estimated arbitration costs/expenses: | $2,500.00 . |

**Total:**                                                      **$8,760.58.**

## REQUEST FOR RELIEF UNDER SUPPLEMENTAL RULE B

34.     The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant. *See Affidavit in Support of Prayer for Maritime Attachment attached hereto as Exhibit 8.*

35.     The charter parties in this case require payment of freight and demurrage due to Plaintiff to be made in U.S. Dollars.  This is consistent with common practice in the maritime industry for payments to be made in U.S. Dollars.

36.     Defendant is believed to be currently engaged in chartering of other vessels for the purpose of importing sawlogs, and/or other cargo and goods, into China and, upon information and belief, is likely to be shipping such cargoes in the coming months.

37.     Any payment by Defendant of vessel charter hire or other sums to a non-domestic entity, or any payment by a non-domestic entity to Defendant, made in U.S. Dollars and effected by an international electronic funds transfer, is exceedingly likely to pass through an intermediary bank, or financial institution, within New York City.  The Clearing House Interbank System ("CHIPS") represents that it processes approximately 95% of all such transfers.

38.     Upon information and belief, based on the foregoing and based on payments made by the Defendant to the Plaintiff, one or more electronic funds transfers in U.S. Dollars will be made from, or to, the Defendant and will be routed through an intermediary bank, or financial institution, within New York City , during the pendency of this action.

39.     The non-party garnishee banks identified on Exhibit A to the proposed Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment participate in the CHIPS system in New York and facilitate U.S. Dollar electronic funds transfers.

40.     The Plaintiff seeks an Order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by any garnishee(s) within the District for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claim as described above.

41.     The Plaintiff also seeks an Order from this Court recognizing, confirming and enforcing any forthcoming London arbitration award(s) in Plaintiff's favor pursuant to 9 U.S.C. §§ 201 *et seq.*

**WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.     That pursuant to 9 U.S.C. §§ 201. *et seq.* and/or the doctrine of comity this Court recognize and confirm any foreign judgment(s), or arbitration award(s), rendered on the claims had herein as Judgment(s) of this Court;

C.      That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all tangible or intangible property of the Defendants within the District, including but not limited to any funds held by any garnishee, which are due and owing to the Defendant, up to the amount of **$39,449.21** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.      That this Court enter Judgment against Defendant on the claims set forth herein;

E.      That this Court retain jurisdiction over this matter through the entry of any Judgment(s) or award(s) associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F.      That this Court award Plaintiff its attorney's fees and costs of this action; and

G.      That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: October 5, 2009

The Plaintiff,
FAR EASTERN SHIPPING CO., PLC

By: _____
Kevin J. Lennon
Darin L. Callahan

LENNON, MURPHY & LENNON, LLC
The Gray Bar Building
420 Lexington Ave., Suite 300
New York, NY 10170
Phone (212) 490-6050
Fax (212) 490-6070
kjl@lenmur.com
dlc@lenmur.com

## ATTORNEY'S VERIFICATION

1.  My name is Kevin J. Lennon.

2.  I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.  I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4.  I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.  The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.  The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and/or agents and representatives of the Plaintiff.

7.  I am authorized to make this Verification on behalf of the Plaintiff.

Dated:        October 5, 2009

Kevin J. Lennon

# EXHIBIT 1

OT: DALIAN MANUFACTORING          HOMEP TEЛEΦOHA: 84232227855          ANP. 07 2009 12:16    CTP2

*09-053-01*

**FIXTURE RECAP**

NO_____DATE·                          03 APRIL 2009

IT IS THIS DAY MUTUALLY AGREED BETWEEN:
SHIPOWNERS: FESCO PLC, 15 ALEUTSKAYA STR., VLADIVOSTOK , 690090 RUSSIA
TEL: 7-4232-521341 FAX. 7-4232-521398
CHARTERERS: PHOENIX GROUP DEV.LIMITED, OFFICE 7/F. KIMLEY COMMERCIAL
BUILDING, #142-146 QUEEN'S ROAD CENTRAL, HONG KONG

THAT THE FIXTURE NOTE SHALL ARRANGE VESSL AND THE FORMER ACCEPTS TO
LOAD CARGO UNDER THE FOLLOWING TERMS AND CONDITION:
01) MV PIONER CHUKOTKI OR PIONER KIRGIZII OOPT
RUS FLG, 1975 OR 1978 BLT, DWCC 5080 MT, LOA/BM/DEPT 130,3 / 17,3 / 8,5 M
GRT/NRT/DWT 5371 / 2469 / 6070 ON 6,9 M SSW, TPCM 16,7
BL / GR CAPA 8250 / 8435 CBM, SINGLE-DECK ,4 HO /
HA, DERRICK 3/20t; 1/40t

| NBR | HOLD SIZE(M): | HATCH SIZE (M): | CAPA GR / BALE (CBM): |
|-----|---------------|------------------|------------------------|
| 1 | 14,8 x 4,2/14,6 x 5,6 | 1 x 12,6 x 8,6 x | 1435 x 1370 |
| 2 | 16,4 x 11/14,0 x 6,7 | 1 x 12,6 x 12,8 x | 1840 x 1760 |
| 3 | 22,5 x 14 x 6,7 | 1 x 18,9 x 12,8 x | 2530 x 2530 |
| 4 | 22,6 x 14 x 6,9 | 1 x 18,9 x 12,6 x | 2630 x 2600 |

VESSEL IS ISM CERTIFIED AND PNI COVERED DURING INTENDED VOYAGE. ALL DETAILS
GIVEN FOR GOOD ORDER, ACCORDING TO BUILDING PLAN, BUT WOG
02) CARGO & QUANTITY
CARGO. 5.300+/-10% CBM AT OOPT OF SAWLOGS ANY CASE UPTO VSL CAPA . DECK
CGO FOR CHTRS/SHIPPERS RISK & EXPENSES
03) LOADING & DISCHARGING PORT:
L/PORT: 1 SP 1SB DE-KASTRI, ALWAYS AFLOAT,ALWAYS ACCESSIBLE
D/PORT: 1 SP 1SB TAICANG OR DALIAN RANGE, CHINA CHOPT, ALWAYS
AFLOAT,ALWAYS ACCESSIBLE
04) LY/CN: 15-19 APRIL 2009
05) LOADING RATE:800 CBM P/DAY. 24 CONS HRS WEATHER PERMITTING SSHINC ,
DISCHARGING RATE 1000 CBM P/DAY .24 CONS HRS WEATHER PERMITTING SHEX UU
IUATAUTC
06) DEM/DES : USD 2000 PDPR /DHD
DETENTION, USD 2500 PDPR IF CARGO AND/OR CARGO DOCUMENTS NOT READY
UPON VESSEL ARRIVAL AT LOADING/DISCHARGING PORTS. DETENTION/DEMERRAGE
IF ANY TO BE SETTELE WITHIN 14 DAYS AFTER COMPLETION OF DISCHG AND AGAINST
SUPPORTING DOCUMENTS.
07) FREIGHT RATE & PAYMENT. USD 19 00 PER CBM FIOST L/S/D BSS 1/1
RUSSIAN VAT ,IF ANY, IS INCLUDED AND TO BE FOR THE OWNERS ACCOUNT
100 % FREIGHT, LESS DISCOUNT (SEE CL.19), TOBE PAID BY CHTRS OR THEIR
NOMINEE TO OWNER NOMINATED BANK/ACCOUNT W/IN 3 BANKING DAYS ACOL
SIGNING B/L, BUT ALWAYS BBB. IF B/L MARKED "FREIGHT PREPAID" IN THIS CASE
ORIGINAL BS/L TO BE KEPT AT LOADPORT AGENT OFFICE AND RELEASED AFTER FULL
PAYMENT OF O/FREIGHT ONLY. IF B/L MARKED "FREIGHT COLLECT" OR "FRT PAYABLE
AS PER C/P" OB/L SIGN/RELEASE AFTER COMPLETION OF LOADING .FREIGHT IS
DEEMED EARNED AND DISCOUNTLESS NON-RETURNABLE UPON COMPLETION
LOADING WHETHER VSL A/O CARGO LOST OR NOT LOST.
08) AGENT: OWNER'S AGENT AT BENDS.
09) OAP IF ANY TO BE FOR CHARTERER'S ACCT.





10) TAX/DUES ON SHIP IF ANY OWNERS' ACCT SAME ON CARGO/FREIGHT IF ANY CHARTERERS' ACCT.

11) LIGHTERAGE/SHIFTING/LIGHTENING IF ANY CHARTERERS' ACCT AT THEIR RISK/TIME AND EXPENSES

12) CARGO TO BE DELIVERED TO CONSIGNEES AGAINST ORIGINAL BILLS OF LADING IF NO ORIGINAL BILL OF LADING ,THE OWNERS ALLOW RELEASE CGO AGAINST RECEIVERS BANK GUARANTEE.

13) TALLY CHARGE SHIPSIDE /DOCKSIDE TO BE FOR CHTRS/RCVRT ACCT, CARGO QUANTITY TO BE SHIPPERS WEIGHT/COUNT/MEASUREMENT , OWNERS NOT RESPOSSIBLE FOR ANY CGO SHORTAGE AGAINST B/L QUANTITY/QUALITY

14)6,0 METERS STANCHION FOR DECK CGO TB FOR CHTRS/SHPRS/RCVRS ACCT AND TB INCL AS CGO

15)IN CASE FUMIGATION CHTRS TO PAY ACCT FOR CGO FUMIGATION INCL CREWS MEAL/LODGING CHARGE ON SHORE AT D/PORT OWNERS ALLOW 24 HRS FOR FUMIGATION, IF MORE. ALL TIME FOR FUMIGATION WILL BE COUNTED AS LAYTIME DURING FUMIGATION ALL CREW MEMBERS SHOULD BE LEAVE THE BOARD OF THE VESSEL TO HOTEL

16) ALL DISPUTES ARRISING BETWEEN THE PARTIES UNDER THIS FIXTURE NOTE IF CAN NOT BE SOLVED BY AMICABLE ARRANGEMENT, SHALL BE FINALLY SETTLED IN LONDON, ENGLISH LAW TO APPLY.

17)NOR TB TENDERED ON VSL ARRL AT BENDS BY CABLE A/O WRITTEN NOTICE WWWWW

18) CHARTERER TO INSTRUCT HIS CARGO AGENT TO PROVIDE OWNER WITH FOLLOWING DOCUMENTS DULLY STUMPED OF CUSTOMS OFFICE AT THE PORT OF LOADING/DISCHARGING IN RUSSIA IN ACCORDANCE WITH TAX CODE OF RUSSIAN FEDERATION, CL. 165:SHIPPING ORDER FOR EXPORT CARGO, IF FAILING , RUSSIAN VAT FOR CHTRS ACCT

19) TOTAL COMM 2,50 MAY BE DEDUCTED FROM FREIGHT PAYMENT BY CHTRS OR THEIR NOMINEES

20) OTHERS TERMS AND CONDITIONS AS PER GENCON CP FORM 1994

21) THIS FIXTURE NOTE COMES INTO EFFECT UPON DULLY SIGNED THROUGH FAX

22) SUBJECT TO BOARD OF FESCO MANAGEMENT OF APPROVAL WITHIN 24 HOURS AFTER ALL SUB LIFTED

END

THE OWNERS           THE CHARTERERS 

# EXHIBIT 2

F  E  S  C  O¶  LTD    FAR-EASTERN  SHIPPING  COMPANY  LTD

Address:15,Aleutskaya,Vladivostok,690019,ROSSIA   Cable:MORFLOT VLADIVOSTOK

Our.ref. 0905301PHOENIXL  28.04.2009

### L A Y D A Y S    S T A T E M E N T

| | | |
|---|---|---|
| Name of Vessel | : | PIONER CHUKOTKI |
| GRT/DVT | : | |
| Charter Party dated | : | 03.04.09 BL 27.04.09 |
| Port of Loading/Discharge | : | |
| Between ports | : | DE-KASTRI |
| Cargo | : | SAWLOGS |
| B/L quantity | : | mts |
| | : | 6111.738 cbms |
| Rate of Loading or Discharge | : | 800 cbms per vessel 1      WWDSIHC. |
| Lay-time allowed | : | 7D-15H-21M ( 7.63967 days) |
| Ship arrived | : | 07:30  15/04/09 |
| Ship berthed | : | 17:15  20/04/09 |
| Notice of Readiness tendered | : | 07:30  15/04/09 |
| Notice of Readiness accepted | : | :    /  / |
| Lay-time commenced | : | 13:00  15/04/09 |
| Loading/Discharging commenced: | | 09:30  21/04/09 |
| Loading/Discharging completed: | | 20:00  27/04/09 |
| Lay-time expiry | : | 04:21  23/04/09 |

Particulars used for:

| Date & Day of Week | Remarks | Lay-time Allowed D-H-M | Used D-H-M | Sav/Lost D-H-M |
|---|---|---|---|---|
| 15/04/09 (Wed) | -    1 PORT | 0-05-00 | 0-05-00 | 0-00-00 |
| | 1300-2400 LAYTIME COMM. | | | |
| | 1300-1900 BAD WEATHER | | | |
| 16/04/09 (Thu) | - | 1-00-00 | 1-00-00 | 0-00-00 |
| 17/04/09 (Fri) | - | 1-00-00 | 1-00-00 | 0-00-00 |
| 18/04/09 (Sat) | - | 1-00-00 | 1-00-00 | 0-00-00 |
| 19/04/09 (Sun) | - | 1-00-00 | 1-00-00 | 0-00-00 |
| 20/04/09 (Mon) | 1530-1715 BERTHING | 0-22-15 | 0-22-15 | 0-00-00 |
| 21/04/09 (Tue) | 0930-2400 LOADING COMM. | 1-00-00 | 1-00-00 | 0-00-00 |
| 22/04/09 (Wed) | - | 1-00-00 | 1-00-00 | 0-00-00 |
| 23/04/09 (Thu) | 0000-1206 LAYTIME EXPIRED | 0-12-06 | 1-00-00 | -0-11-54 |
| 24/04/09 (Fri) | - | 0-00-00 | 1-00-00 | -1-00-00 |
| 25/04/09 (Sat) | - | 0-00-00 | 1-00-00 | -1-00-00 |
| 26/04/09 (Sun) | - | 0-00-00 | 1-00-00 | -1-00-00 |
| 27/04/09 (Mon) | 0000-2000 LOADING COMPL. | 0-00-00 | 0-20-00 | -0-20-00 |
| Total | | 7-15-21 | 11-23-15 | -4-07-54 |

Demurrage calculation
        4.32917(days) * 2000.00(US$) =   8658.34(US$)

# EXHIBIT 3

Phoenix Group Dev. Ltd <phogroup@yandex.ru>
Кому .
От: Vladimir V. Tikhonov
05.08.2009 11:30
Рабочее письмо электронная почта (e-mail) Копия

Обобщ.тема

Тема
>>: Fesco / Phoenix Group. Outstanding balance

Re: Demurrage at De-Kastri on 03/04/09, 17/04/09, 29/04/09.

Dear Sir,

We request you to urgently take steps to settlement of the below-mentioned matter or at least provide your explanations why the demurrage remains outstanding otherwise we will undertake legal actions against your company.

----- Переслано: Vladimir V. Tikhonov/FESCO/RU дата: 02.10.2009 15:25 -----

Vladimir V. Tikhonov/FESCO/RU
Кому
phogroup@yandex.ru
От: Vladimir V. Tikhonov
02.07.2009 14:49
Рабочее письмо электронная почта (e-mail)
Копия

Обобщ.тема

Тема
Fesco / Phoenix Group. Outstanding balance

Dear Sir,

Our Fleet department has passed all materials to Legal depatment in respect of unpaid demurrage in the sum of USD 14,752.78 for recovery.

Concerned vessels "ABAKAN", "Pioner Kirgizii", "Pioner Chukotki" were chartered to your company basing on fixtures dated 3rd, 17th and 29th April 2009. Calculations of demurrage were accomplished by our commercial managers and sent to you.

Up to the moment the sum of demurrage remains outstanding. We therefore request you to remit USD 14,752.78 to Fesco's account otherwise we will be compelled to employ legal means.

# EXHIBIT 4

09-056.01
Гаруя леов 10/4

**FIXTURE RECAP**

NO_____DATE.                              17ᵗʰ APRIL 2009

IT IS THIS DAY MUTUALLY AGREED BETWEEN:
SHIPOWNERS: FESCO PLC, 15 ALEUTSKAYA STR., VLADIVOSTOK , 690090 RUSSIA
TEL: 7-4232-521341 FAX: 7-4232-521398
CHARTERERS PHOENIX GROUP DEV. LIMITED, OFFICE 7/F, KIMLEY COMMERCIAL
BUILDING, # 142-146 QUEEN'S ROAD CENTRAL, HONG KONG

THAT THE FIXTURE NOTE SHALL ARRANGE VESSL AND THE FORMER ACCEPTS TO
LOAD CARGO UNDER THE FOLLOWING TERMS AND CONDITION
01) MV PIONER KIRGIZII
RUS FLG, 1978 BLT, DWCC 5080 MT, LOA/BM/DEPT 130,3 / 17,34 / 8,5 M
GRT/NRT/DWT 5371 / 2469 / 6070 ON 6,93 M SSW, TPCM 16,7
BL / GR CAPA 8250 / 8435 CBM, SINGLE-DECK ,4 HO / - TWDK /
HA, ,DERRICK 3x20t; 1x40t
CALL SIGN UFZQ, LLOYD'S NO : 7731969

| NBR | HOLD SIZE(M): | HATCH SIZE (M): | CAPA GR / BALE (CBM): |
|-----|---------------|------------------|------------------------|
| 1 | 14,8 x 4,2/14,6 x 5,6 | 1 x 12,6 x 8,5 x | 1435 x 1370 |
| 2 | 16,4 x 11,0/14,0 x 6.7 | 1 x 12.6 x 12,8 x | 1840 x 1750 |
| 3 | 22,5 x 14 x 6,7 | 1 x 18,9 x 12,8 x | 2530 x 2530 |
| 4 | 22.5 x 14 x 6.9 | 1 x 18,9 x 12,8 x | 2630 x 2600 |

VESSEL IS ISM CERTIFIED AND PNI COVERED DURING INTENDED VOYAGE. ALL DETAILS
GIVEN FOR GOOD ORDER, ACCORDING TO BUILDING PLAN, BUT WOG
02) CARGO & QUANTITY
CARGO  5,200+/-10%  CBM  AT OOPT OF SAWLOGS  ANY CASE UPTO VSL CAPA ,  DECK
CGO FOR CHTRS/SHIPPERS  RISK & EXPENSES
03) LOADING & DISCHARGING PORT:
L/PORT: 1 SP 1SB  DE-KASTRI, ALWAYS AFLOAT,ALWAYS ACCESSIBLE
D/PORT. 1 SP 1SB TAICANG OR YANTAI RANGE  CHINA, ALWAYS AFLOAT,ALWAYS
ACCESSIBLE
04) LY/CN. 22-23 APRIL 2009
05) LOADING  RATE:800 CBM P/DAY, 24 CONS HRS WEATHER PERMITTING SSHINC
DISCHARGING RATE 1000  CBM P/DAY ,24 CONS HRS WEATHER PERMITTING SHEX UU
IUATAUTC
06) DEM/DES : USD 2000 PDPR /FREE
DETENTION. USD 2500 PDPR IF CARGO AND/OR CARGO DOCUMENTS NOT READY
UPON VESSEL ARRIVAL AT LOADING/DISCHARGING PORTS. DETENTION/DEMERRAGE
IF ANY TO BE SETTELE WITHIN 14 DAYS AFTER COMPLETION OF DISCHG AND AGAINST
SUPPORTING DOCUMENTS.
07) FREIGHT RATE & PAYMENT: USD 19,50 PER CBM  FIOST L/S/D BSS 1/1
RUSSIAN VAT  IF ANY, IS INCLUDED AND TO BE FOR THE OWNERS ACCOUNT
100 % FREIGHT, LESS DISCOUNT (SEE CL 19), TOBE PAID BY CHTRS OR THEIR
NOMINEE TO OWNER NOMINATED BANK/ACCOUNT WIN 3 BANKING DAYS ACOL
SIGNING B/L, BUT ALWAYS BBB  IF B/L MARKED "FREIGHT PREPAID" IN THIS CASE
ORIGINAL BS/L TO BE KEPT AT LOADPORT AGENT OFFICE AND RELEASED AFTER FULL
PAYMENT OF O/FREIGHT ONLY, IF B/L MARKED "FREIGHT COLLECT" OR "FRT PAYABLE
AS PER C/P" OB/L SIGN/RELEASE AFTER COMPLETION OF LOADING  FREIGHT IS
DEEMED EARNED AND DISCOUNTLESS NON-RETURNABLE UPON COMPLETION
LOADING WHETHER VSL A/O CARGO LOST OR NOT LOST.
08) AGENT  OWNER'S AGENT AT BENDS
09) OAP IF ANY TO BE FOR CHARTERER'S ACCT
10) TAX/DUES ON SHIP IF ANY OWNERS' ACCT SAME ON CARGO/FREIGHT IF ANY
CHARTERERS' ACCT





11) LIGHTERAGE/SHIFTING/LIGHTENING IF ANY CHARTERERS' ACCT AT THEIR RISK/TIME AND EXPENSES

12) CARGO TO BE DELIVERED TO CONSIGNEES AGAINST ORIGINAL BILLS OF LADING. IF NO ORIGINAL BILL OF LADIING ,THE OWNERS ALLOW RELEASE CGO AGAINST RECEIVERS BANK GUARANTEE.

13) TALLY CHARGE  SHIPSIDE /DOCKSIDE TO BE FOR CHTRS/RCVRT ACCT, CARGO QUANTITY TO BE SHIPPERS WEIGHT/COUNT/MEASUREMENT , OWNERS NOT RESPOSSIBLE FOR ANY CGO SHORTAGE AGAINST B/L QUANTITY/QUALITY

14)6,0 METERS STANCHION FOR DECK CGO TB FOR CHTRS/SHPRS/RCVRS ACCT AND TB INCL AS CGO

15)IN CASE FUMIGATION CHTRS TO PAY ALL COST FOR CGO FUMIGATION INCL CREW'S MEAL/LODGING CHARGE ON SHORE AT D/PORT, OWNERS ALLOW 24 HRS FOR FUMIGATION, IF MORE,  ALL TIME FOR FUMIGATION WILL BE COUNTED AS LAYTIME DURING FUMIGATION ALL CREW MEMBERS SHOULD BE LEAVE THE BOARD OF THE VESSEL TO HOTEL , DUTY SEAMEN SHOULD BE KEEP ON WATCH ON THE TUG BOARD AROUND BOARD OF THE VSL,  WHICH SHOULD BE ARRANGE BY CHTRS FOR THEIR ACCT

16) ALL DISPUTES ARRISING BETWEEN THE PARTIES UNDER THIS FIXTURE NOTE IF CAN NOT BE SOLVED BY AMICABLE ARRANGEMENT, SHALL BE FINALLY SETTLED IN LONDON, ENGLISH LAW TO APPLY.

17)NOR TB TENDERED ON VSL ARRL AT BENDS BY CABLE A/O WRITTEN NOTICE WWWWW

18) CHARTERER TO INSTRUCT HIS CARGO AGENT TO PROVIDE OWNER WITH FOLLOWING DOCUMENTS DULLY STUMPED OF CUS    IS OFFICE AT THE PORT OF LOADING/DISCHARGING IN RUSSIA IN ACCORDANC     TH TAX CODE OF RUSSIAN FEDERATION, CL. 165:SHIPPING ORDER FOR EXPO    ARGO, IF FAILING , RUSSIAN VAT FOR CHTRS ACCT

19) TOTAL COMM 2,50 MAY BE DEDUCTED FROM FRE   HT PAYMENT BY CHTRS OR THEIR NOMINEES

20) OTHERS TERMS AND CONDITIONS AS PER GENC    CP FORM 1994.

21) THIS FIXTURE NOTE COMES INTO EFFECT UPON D  LLY SIGNED THROUGH FAX.

22) SUBJECT TO BOARD OF FESCO MANAGEMENT AP   ROVAL WITHIN 24 HOURS AFTER ALL SUB LIFTED


END


THE OWNERS

THE CHARTERERS

# EXHIBIT 5

F E S C O¶ LTD   FAR-EASTERN  SHIPPING  COMPANY  LTD

Address:15,Aleutskaya,Vladivostok,690019,ROSSIA  Cable:MORFLOT VLADIVOSTOK

Our.ref. 0905601PHOENIXL  25.05.2009

L A Y D A Y S   S T A T E M E N T

| | | |
|---|---|---|
| Name of Vessel | : | PIONER KIRGHIZII |
| GRT/DVT | : | |
| Charter Party dated | : | 17.04.09 |
| Port of Loading/Discharge | : | |
| Between ports | : | DE-KASTRI |
| Cargo | : | SAWLOGS |
| B/L quantity | : | mts |
| | : | 5284.495 cbms |
| Rate of Loading or Discharge | : | 800 cbms per vessel 1    WWDSIHC. |
| ay-time allowed | : | 6D-14H-32M ( 6.60562 days) |
| ship arrived | : | 08:00  25/04/09 |
| Ship berthed | : | 19:30  28/04/09 |
| Notice of Readiness tendered | : | 08:00  25/04/09 |
| Notice of Readiness accepted | : | :    /  / |
| Lay-time commenced | : | 13:00  25/04/09 |
| Loading/Discharging commenced | : | 15:00  29/04/09 |
| Loading/Discharging completed | : | 17:00  04/05/09 |
| Lay-time expiry | : | 03:32  02/05/09 |

Particulars used for:

| Date & Day of Week | Remarks | Lay-time Allowed D-H-M | Used D-H-M | Sav/Lost D-H-M |
|---|---|---|---|---|
| 25/04/09 (Sat) | -    1 PORT 1300-2400 LAYTIME COMM. | 0-11-00 | 0-11-00 | 0-00-00 |
| 26/04/09 (Sun) | - | 1-00-00 | 1-00-00 | 0-00-00 |
| 27/04/09 (Mon) | - | 1-00-00 | 1-00-00 | 0-00-00 |
| 28/04/09 (Tue) | 1800-1930 BERTHING | 0-22-30 | 0-22-30 | 0-00-00 |
| 29/04/09 (Wed) | 1500-2400 LOADING COMM. | 1-00-00 | 1-00-00 | 0-00-00 |
| 30/04/09 (Thu) | - | 1-00-00 | 1-00-00 | 0-00-00 |
| 01/05/09 (Fri) | - | 1-00-00 | 1-00-00 | 0-00-00 |
| 02/05/09 (Sat) | 0000-0502 LAYTIME EXPIRED | 0-05-02 | 1-00-00 | -0-18-58 |
| 03/05/09 (Sun) | - | 0-00-00 | 1-00-00 | -1-00-00 |
| 04/05/09 (Mon) | 0000-1700 LOADING COMPL. | 0-00-00 | 0-17-00 | -0-17-00 |
| Total | | 6-14-32 | 9-02-30 | -2-11-58 |

Demurrage calculation
        2.49861(days) * 2000.00(US$) =  4997.22(US$)

# EXHIBIT 6

**FIXTURE RECAP**  *09-068-01*
*Багрецов 7/5*

NO_____DATE.                          29ᵗʰ APRIL 2009

IT IS THIS DAY MUTUALLY AGREED BETWEEN:
SHIPOWNERS  FESCO PLC. 15 ALEUTSKAYA STR., VLADIVOSTOK , 690090 RUSSIA
TEL. 7-4232-521341 FAX  7-4232-521398
CHARTERERS PHOENIX GROUP DEV  LIMITED, OFFICE 7/F, KIMLEY COMMERCIAL
BUILDING, # 142-146 QUEEN'S ROAD CENTRAL, HONG KONG

THAT THE FIXTURE NOTE SHALL ARRANGE VESSL AND THE FORMER ACCEPTS TO
LOAD CARGO UNDER THE FOLLOWING TERMS AND CONDITION:
01) MV  ABAKAN
RUS FLG, 1990 BLT, DWCC 6508 MT, LOA/BM/DEPT 132,7 / 19,86 / 8,8 M
GRT/NRT/DWT 7095 / 2936 / 7365 ON 6,89 M SSW, TPCM 22
BL / GR CAPA 10022 / 10474,6 CBM,  SINGLE-DECK ,4 HO ,
HA, CRANE 4x20t (twin. 2x20t=40t) , CALL SIGN UISD, LLOYD'S NO : 8711277

| NBR | HOLD SIZE(M): | HATCH SIZE (M): | CAPA GR / BALE (CBM): |
|-----|---------------|-----------------|------------------------|
| 1 | 15,7 x 10,0 x 7,9 | 1 x 12,6 x 10,2 x | 1260,1 x 1206 |
| 2 | 23,4 x 16,0 x 9 | 1 x 19,2 x 15,36 x | 3224 x 3084 |
| 3 | 21,75 x 16,0 x 9 | 1 x 18,75 x 15,36 x | 3034,1 x 2803 |
| 4 | 21 x 16,0 x 9 | 1 x 18,75 x 15,36 x | 2956,4 x 2829 |

VESSEL IS ISM CERTIFIED AND PNI COVERED DURING INTENDED VOYAGE. ALL DETAILS
GIVEN FOR GOOD ORDER, ACCORDING TO BUILDING PLAN, BUT WOG
02) CARGO & QUANTITY
CARGO  6000+/-10%  CBM  AT OOPT OF SAWLOGS  ANY CASE UPTO VSL CAPA ,  DECK
CGO FOR CHTRS/SHIPPERS  RISK & EXPENSES
03) LOADING & DISCHARGING PORT:
L/PORT. 1 SP 1SB  DE-KASTRI, ALWAYS AFLOAT,ALWAYS ACCESSIBLE
D/PORT. 1 SP 1SB TAICANG OR DALIAN RANGE. CHINA, ALWAYS AFLOAT,ALWAYS
ACCESS.BLE
04) LY/CN  12-14 MAY 2009
05) LOADING  RATE:800 CBM P/DAY, 24 CONS HRS WEATHER PERMITTING SHEXUU,
DISCHARGING RATE 1000  CBM P/DAY ,24 CONS HRS WEATHER PERMITTING SHEX UU
IUATAUTC
06) DEM/DES  USD 2000 PDPR /FRLE
DETENTION: USD 2500 PDPR IF CARGO AND/OR CARGO DOCUMENTS NOT READY
UPON VESSEL ARRIVAL AT LOADING/DISCHARGING PORTS  DETENTION/DEMERRAGE
IF ANY TO BE SETTELE WITHIN 14 DAYS AFTER COMPLETION OF DISCHG AND AGAINST
SUPPORTING DOCUMENTS.
07) FREIGHT RATE & PAYMENT: USD 19,25 PER CBM FIOST USD BSS 1/1
RUSSIAN VAT ,IF ANY, IS INCLUDED AND TO BE FOR THE OWNERS ACCOUNT
100 % FREIGHT. LESS DISCOUNT (SEE CL 19), TOBE PAID BY CHTRS OR THEIR
NOMINEE TO OWNER NOMINATED BANK/ACCOUNT WIIN 5 BANKING DAYS ACOL
SIGNING B/L , BUT ALWAYS BBB  IF B/L MARKED "FREIGHT PREPAID" IN THIS CASE
ORIGINAL BS/L TO BE KEPT AT LOADPORT AGENT OFFICE AND RELEASED AFTER FULL
PAYMENT OF O/FRFIGHT ONLY  IF B/L MARKED "FREIGHT COLLECT" OR "FRT PAYABLE
AS PER C/P" OB/L SIGN/RELEASE AFTER COMPLETION OF LOADING .FREIGHT IS
DEEMED EARNED AND DISCOUNTLESS NON-RETURNABLE UPON COMPLETION
LOADING WHETHER VSL A/O CARGO LOST OR NOT LOST
08) AGENT  OWNER'S AGENT AT BENDS.
09) OAP IF ANY TO BE FOR CHARTERER'S ACCT.
10) TAX/DUES ON  SHIP IF ANY OWNERS' ACCT SAME ON CARGO/FREIGHT IF ANY
CHARTERERS' ACCT





11) LIGHTERAGE/SHIFTING/LIGHTENING IF ANY CHARTERERS' ACCT AT THEIR RISK/TIME AND EXPENSES

12) CARGO TO BE DELIVERED TO CONSIGNEES AGAINST ORIGINAL BILLS OF LADING IF NO ORIGINAL BILL OF LADING , THE OWNERS ALLOW RELEASE CGO AGAINST RECEIVERS BANK GUARANTEE.

13) TALLY CHARGE SHIPSIDE /DOCKSIDE TO BE FOR CHTRS/RCVRT ACCT CARGO QUANTITY TO BE SHIPPERS WEIGHT/COUNT/MEASUREMENT . OWNERS NOT RESPOSSIBLE FOR ANY CGO SHORTAGE AGAINST B/L QUANTITY/QUALITY

14) 6,0 METERS STANCHION FOR DECK CGO TB FOR CHTRS/SHPRS/RCVRS ACCT AND TB INCL AS CGO

15) IN CASE FUMIGATION CHTRS TO PAY ALL COST FOR CGO FUMIGATION INCL CREW'S MEAL/LODGING CHARGE ON SHORE AT D/PORT, OWNERS ALLOW 24 HRS FOR FUMIGATION, IF MORE, ALL TIME FOR FUMIGATION WILL BE COUNTED AS LAYTIME DURING FUMIGATION ALL CREW MEMBERS SHOULD BE LEAVE THE BOARD OF THE VESSEL TO HOTEL

16) ALL DISPUTES ARRISING BETWEEN THE PARTIES UNDER THIS FIXTURE NOTE IF CAN NOT BE SOLVED BY AMICABLE ARRANGEMENT, SHALL BE FINALLY SETTLED IN LONDON, ENGLISH LAW TO APPLY

17) NOR TB TENDERED ON VSL ARRL AT BENDS BY CABLE A/O WRITTEN NOTICE WWWWW

18) CHARTERER TO INSTRUCT HIS CARGO AGENT TO PROVIDE OWNER WITH FOLLOWING DOCUMENTS DULLY STUMPED OF CUSTOMS OFFICE AT THE PORT OF LOADING/DISCHARGING IN RUSSIA IN ACCORDANCE WITH TAX CODE OF RUSSIAN FEDERATION, CL 165:SHIPPING ORDER FOR EXPORT CARGO, IF FAILING , RUSSIAN VAT FOR CHTRS ACCT

19) TOTAL COMM 2,50 % MAY BE DEDUCTED FROM FREIGHT PAYMENT BY CHTRS OR THEIR NOMINEES

20) OTHERS TERMS AND CONDITIONS AS PER GENCON CP FORM 1994.

21) THIS FIXTURE NOTE COMES INTO EFFECT UPON DULLY SIGNED THROUGH FAX.

22) SUBJECT TO BOARD OF FESCO MANAGEMENT APPROVAL WITHIN 24 HOURS AFTER ALL SUB LIFTED


END


THE OWNERS



THE CHARTERERS



# EXHIBIT 7

```
        F E S C O¶ LTD    FAR-EASTERN  SHIPPING  COMPANY  LTD

Address:15,Aleutskaya,Vladivostok,690019,ROSSIA   Cable:MORFLOT VLADIVOSTO

Our.ref. 0906801PHOENIXL  25.05.2009

                 L A Y D A Y S    S T A T E M E N T

Name of Vessel            :  ABAKAN
GRT/DVT                    :
Charter Party dated        :  29.04.09
Port of Loading/Discharge  :
Between ports              :  DE-KASTRI
Cargo                      :  SAWLOGS
B/L quantity               :            mts
                           :   6427.938 cbms .
Rate of Loading or Discharge :  800 cbms per vessel 1      WWDSHEX. UU.
Lay-time allowed           :  8D-00H-50M ( 8.03492 days)
Ship arrived               :  09:00  12/05/09
Ship berthed               :  18:30  15/05/09
Notice of Readiness tendered :  09:00  12/05/09
Notice of Readiness accepted :    :     /  /
Lay-time commenced         :  13:00  12/05/09
Loading/Discharging commenced:  22:00  16/05/09
Loading/Discharging completed:  12:30  21/05/09
Lay-time expiry            :  15:20  21/05/09
       Particulars used for:
```

| Date & Day of Week | Remarks | Lay-time Allowed D-H-M | Used D-H-M | Sav/Los D-H-M |
|---|---|---|---|---|
| 12/05/09 (Tue) | - 1 PORT 1300-2400 LAYTIME COMM. | 0-11-00 | 0-11-00 | 0-00-0 |
| 13/05/09 (Wed) | - | 1-00-00 | 1-00-00 | 0-00-0 |
| 14/05/09 (Thu) | - | 1-00-00 | 1-00-00 | 0-00-0 |
| 15/05/09 (Fri) | 1700-1830 BERTHING | 0-22-30 | 0-22-30 | 0-00-0 |
| 16/05/09 (Sat) | 2200-2400 LOADING COMM. | 1-00-00 | 1-00-00 | 0-00-0 |
| 17/05/09 (Sun) | 0800-2400 LOADING | 0-16-00 | 0-16-00 | 0-00-0 |
| 18/05/09 (Mon) | - | 1-00-00 | 1-00-00 | 0-00-0 |
| 19/05/09 (Tue) | - | 1-00-00 | 1-00-00 | 0-00-0 |
| 20/05/09 (Wed) | 0000-2320 LAYTIME EXPIRED | 0-23-20 | 1-00-00 | -0-00-4 |
| 21/05/09 (Thu) | 0000-1230 LOADING COMPL. | 0-00-00 | 0-12-30 | -0-12-3 |
| Total | | 8-00-50 | 8-14-00 | -0-13-1 |

```
Demurrage calculation
      0.54861(days) * 2000.00(US$)  =   1097.22(US$)
```

# EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
FAR EASTERN SHIPPING CO., PLC,      :     09 CV _____

               :

         Plaintiff,     :     ECF CASE

               :

   - against -        :

               :

PHOENIX GROUP DEVELOPMENT LIMITED  :
a/k/a PHONEIX GROUP DEV. LTD.,     :

               :

        Defendant.    :
-------------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut  )
              )   ss: SOUTHPORT
County of Fairfield   )

Kevin J. Lennon, being duly sworn, deposes and says:

1.     I am a member of the Bar of this Court and represent the Plaintiff herein.  I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

## DEFENDANT IS NOT PRESENT IN THE DISTRICT

2.     I have attempted to locate the Defendant PHOENIX GROUP DEVELOPMENT

LIMITED a/k/a PHOENIX GROUP DEV. LTD. within this District.  As part of my

investigation to locate the Defendant within this District, I checked the telephone company

information directory, as well as the white and yellow pages for New York listed on the Internet

or World Wide Web, and did not find any listing for the Defendant.  Finally, I checked the New

York State Department of Corporations' online database which showed no listings or registration

for the Defendant.

3.     I submit based on the foregoing that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("Rule B").

**DEFENDANT'S PROPERTY MAY BE FOUND IN THIS DISTRICT**

4.     Upon information and belief, and also based upon payments made by the Defendant to the Plaintiff under the involved contracts which were received by way of electronic funds transfers routed through New York intermediary banks, the Defendant has, or will have during the pendency of this action, tangible and intangible property as the same is defined under Rule B within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

5.     In support of its belief that Defendants will have assets within the District and subject to the court's jurisdiction, Plaintiffs directs this Court's attention to the wire remittance confirmation reflecting the Defendant's payment Plaintiff for freight due on the fixture for the M/V Pioneer Chukotki via New York intermediary bank Bank of New York Mellon as reflected by Exhibit A attached hereto.

6.      Upon information and belief, in the case of payments made by an overseas defendant, the vast majority of electronic funds transfers in U.S. dollars pass through banking/financial intermediaries located within this District.

7.     Upon information and belief, Defendant has ongoing contractual obligations, or has had such obligations, that require it to make payments in U.S. dollars.  Thus, the likelihood that the Defendants will send its future payments through one of the banks named in Schedule "A" to the proposed ORDER DIRECTING CLERK TO ISSUE PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT AND APPOINTING PROCESS SERVER is high and

2

satisfies the reasonable belief threshold. The garnishee banks listed are limited to ones who regularly act as "intermediary banks" to effect wire transfers in U.S. dollars between a foreign originating bank and a foreign beneficiary bank.

**PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER**

8.    Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy R. Peterson, Coleen A. McEvoy, Anne C. LeVasseur, Darin L. Callahan or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account of, the Defendant.

9.    Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendant.

10.    To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, it is submitted that there is no sound reason to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ and the required use of a Marshal will cause delay,

3

additional expense and provide no benefit in respect of the purpose for which Plaintiff has filed this action.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

11.    Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendants, within this District.  Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

12.    Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the proposed Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served and throughout the next day, provided that process is served the next day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

13.    Several garnishee banks, including, but not limited to, J.P. Morgan Chase, BNP Paribas, and Societe Generale, currently refuse consent to deem service of Rule B Orders and writs continuous which necessitates service of these garnishees numerous times throughout any given day.  In seeking an Ex Parte Order deeming service continuous the Plaintiff relies on the holding in *DNSD Subsea AS v. Oceanografia, S.A. de CV*, 569 F. Supp. 2d 339, 347 (S.D.N.Y. 2008) which, in upholding the propriety of an Ex Parte Order which deemed service continuous, stated as follows:

4

Clearly, the goal of the continuous service provision contained in the order signed by Judge Karas in this case and by Judge Scheindlin in *Ulisses* was *not* to undermine the Second Circuit's prohibition on the attachment of after-acquired property announced in *Reibor*. Rather, the continuous service provision 'was intended to avoid the absurdity, security problems, and inconvenience of requiring the garnishee banks to accept service repeatedly throughout the day.' *Ulisses, 415 F. Supp. 2d at 328*. Indeed, the absence of such a continuous service provision – either by court order or by consent from the garnishees – would inevitably result in the posting of lawyers and/or process servers at bank offices around the clock in an attempt to capture EFTs at the precise moment of their arrival. Defendant's narrow reading of *Reibor*, would, in effect, overrule the Second Circuit's later holding in *Winter Storm* – something the Second Circuit expressly declined to do in *Aqua Stoli* -- by making it virtually impossible to attach EFTs in Rule B cases.

14.    The Courts within the Southern District of New York have an interest in preserving the efficacy of the Ex Parte Orders issued therein. As a result, and in order to give effect to the Rule B relief requested herein, the Plaintiff request that the Court issue an Ex Parte Order deeming service continuous.

Dated: October 5, 2009
       Southport, CT

_____
                Kevin J. Lennon

Sworn and subscribed to before me
this 5th day of October, 2009

_____
Notary Public

Sharmaine M Passaro
Notary Public-Connecticut
My Commission Expires
March 31, 2014

# EXHIBIT A

```
****** RECEIVED MESSAGE ******                  2009-04-28 19:18   page no : 9286
Status  : MESSAGE DELIVERED
Station :   1            BEGINNING OF MESSAGE
```

```
RCVD *FIN/Session/OSN         :F01   3006    844752
RCVD *Own Address             :VTBRRUM2AVDV   JSC VTB BANK
RCVD *                                        VLADIVOSTOK
RCVD *                                        (VLADIVOSTOK BRANCH)
RCVD *Output Message Type     :103            SINGLE CUSTOMER CREDT TRANSFER
RCVD *Input Time              :0411
RCVD *MIR                     :090428IRVTUS3NCXXX3218571495
RCVD *Sent by                 :IRVTUS3NCXXX   THE BANK OF NEW YORK MELLON
RCVD *                                        NEW YORK,NY
RCVD *Output Date/Time        :090428/1211
RCVD *Priority                :Normal
RCVD *MUR                     :FTS0904285513000
RCVD *
RCVD *{3:{108:FTS0904285513000}}
RCVD *
RCVD *---------------------------------------------------------------
RCVD *20 /SENDER'S REFERENCE
RCVD *     FTS0904285513000
RCVD *23B/BANK OPERATION CODE
RCVD *     CRED
RCVD *32A/VAL DTE/CURR/INTERBNK SETTLD AMT
RCVD *     090428USD94328,96
RCVD *                          2009-04-28
RCVD *                          US Dollar
RCVD *                                                         94328,96
RCVD *50F/ORDERING CUSTOMER - ID
RCVD *     /650006938278
RCVD *     1/PHOENIX GROUP DEV.LIMITED
RCVD *     2/751-1
RCVD *     3/KR/JANGHANG-DONG ILSANDONG-GU, GO
RCVD *52A/ORDERING INSTITUTION - BIC
RCVD *     KOEXKRSE
RCVD *                          KOREA EXCHANGE BANK
RCVD *                          SEOUL
RCVD *
RCVD *59 /BENEFICIARY CUSTOMER-NAME & ADDR
RCVD *     /40702840734003000236
RCVD *     FAR EASTERN SHIPPING COMPANY,PLC
RCVD *     RUSSIA
RCVD *70 /REMITTANCE INFORMATION
RCVD *     O-FREIGHT MV PIONER CHUKOTKI
RCVD *     BNY CUST RRN - FTS0904285513000
RCVD *71A/DETAILS OF CHARGES
RCVD *     SHA
RCVD *72 /SENDER TO RECEIVER INFORMATION
RCVD *     /BNF/LESS FEES
RCVD *-
RCVD *---------------------------------------------------------------
RCVD *MAC: Authentication Code
RCVD *     00000000
RCVD *CHK: CheckSum
RCVD *     093C75DFF3DE
RCVD *
RCVD *SAC: SWIFT Authentication Correct
RCVD *SEQ: Sequence Number
RCVD *     261982 Total    238482 SWIFT
RCVD *PCC:F: PC Connect : First Copy Of The Message
RCVD *---------------------------------------------------------------
```